UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KARLI D.,

                               **Plaintiff,**

v.                                                            5:22-cv-0655

**COMMISSIONER OF SOCIAL SECURITY,**

                               **Defendant.**
_____

**THOMAS J. MCAVOY**
**Senior United States District Court Judge:**

### DECISION and ORDER

        Plaintiff Karli D. ("plaintiff" or "claimant") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI"). (Dkt. No. 1). Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying her application for benefits was not supported by substantial evidence and contrary to the applicable legal standards. (Dkt. No. 9). Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

**I.      PROCEDURAL HISTORY**

        On April 28, 2020, Plaintiff filed an application for Title XVI SSI benefits, alleging disability beginning August 28, 2014, due to major depression, anxiety, insomnia sleep disorder, attention deficit hyperactivity disorder ("ADHD"), and posttraumatic stress disorder ("PTSD"). Administrative Record ("R") at 69, 81, 208. Her claim was denied initially on July 30, 2020,

1

and upon reconsideration on December 18, 2020. R. 96, 104. Following a hearing held on January 12, 2021 (R. 24–54), Administrative Law Judge ("ALJ") Jennifer Gale Smith issued an unfavorable decision dated May 28, 2021. (R. 10–19). On April 22, 2022, the Appeals Council denied review of the decision (R. 1), making the ALJ's decision the final determination of the Commissioner. This action followed. This Court has jurisdiction under 42 U.S.C. § 405(g).

## II.     LEGAL STANDARDS

### A.     Standard of Review

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on legal error or not supported by substantial evidence in the record.'" *Hill v. Comm'r of Soc. Sec.*, No. 1:19-CV-5096, 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020) (quoting *Cole v. Colvin*, 12-cv-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)). "Accordingly, [a court] must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). A court "will overturn a SSA decision only if the ALJ applies an incorrect legal standard, or if the ALJ's ruling is not supported by substantial evidence." *Id.* (citation omitted). "The substantial evidence standard is 'not high.'" *Id.* (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (quotation marks omitted)). "It is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quotation marks omitted)). Properly applied, this standard is highly deferential

to the presiding ALJ, "who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

"[O]nce an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). The Court must not re-weigh evidence, assess the reliability of witnesses, or otherwise substitute its judgment for the ALJ's. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). "However, this 'deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law.'" *Kenneth H. v. Commr. of Soc. Sec.*, 6:21-CV-324, 2022 WL 2954364, at *3 (N.D.N.Y. July 26, 2022) (quoting *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)). "Thus, 'where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards,' the decision should not be affirmed." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). "This is so regardless of whether or not the decision is otherwise supported by 'substantial evidence.'" *Id.* (citing *Johnson*, 817 F.2d at 986). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

### B. Determination of Disability

To obtain disability benefits, the claimant must prove that she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The Commissioner evaluates disability claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof at steps one through four, which includes establishing her residual functional capacity ("RFC"). *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

A plaintiff's RFC is defined as "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). If the claimant reaches step five, the Commissioner must produce evidence that the claimant could perform a significant number of jobs given her age, education, work experience, and RFC. *Id.* Generally, the Commissioner can rely on vocational expert testimony for that purpose. *Biestek*, 139 S. Ct. at 1148, 1152.

### III. FACTUAL BACKGROUND

#### A. Age, Education, and Work Experience

Plaintiff was 28 years old on the date of the ALJ's decision. R. 19, 219. She has an

eleventh-grade education and attended early childhood education at the Board of Cooperative Educational Services ("BOCES"). R. 224. She has no past work. R. 224.

## B. Clinical Evidence

From approximately April 2019 to April 2020, Plaintiff treated with several mental health providers for symptoms of anxiety and depression. R. 292–372, 438–444, 600–641. Among other things, she reported difficulty concentrating, racing thoughts, insomnia, and flashbacks. R. 295, 312, 354, 367. She was observed to be anxious and on edge, and to have only fair insight and judgment. R. 338, 357–59, 440, 602–03, 620–21, 629–30, 635–36.

From approximately April to October 2020, Plaintiff treated with Licensed Mental Health Counselor ("LMCH") James Amodio. R. 290–292, 410, 435, 451–52, 457–468, 473–74. Plaintiff complained of depression, anxiety, flashbacks, hypervigilance, and poor concentration. R. 290, 410, 416, 426, 431–34, 451, 458, 464–466, 473. She presented with limited intellect. R. 410, 412–13, 416. She reported crying spells, low energy, feelings of sadness, anger, disorganization, distractibility, frustrated easily, low self-esteem, nightmares, impulsivity, isolation related to unresolved trauma, fear of inadequacy, difficulty concentrating, racing thoughts, and interpersonal issues which impact her day-to-day life. R. 416, 424, 459–62, 467. She reported being sad and tearful, and that she remained fearful of her mother's significant other who abused her when she was a child. R. 290, 414, 423, 431, 434. She was hesitant to pursue treating her trauma. R. 424. She was noted to be tearful during her session. R. 291. Examinations showed that Plaintiff's attention and concentration were fair, her mood was anxious, and her insight and judgment were fair. R. 421–22, 429–30. She displayed poor attention and concentration. R. 426.

From approximately June 2020 to March 2021, Plaintiff treated with Nurse Practitioner David Porter for medication management. R. 453–457, 468–473, 501–536, 551–567, 593. She complained of difficulty concentrating, feelings of worthlessness/guilt, feelings of losing control, irritability, psychomotor agitation, racing thoughts, and insomnia. R. 453, 460, 502, 511, 520, 593–94. She also reported agoraphobia and palpitations. R. 502, 511, 560. Examinations showed that Plaintiff had poor insight, fair judgment, anxious and irritable mood, below average impulse control, and below average intelligence. R. 455–56, 470–71, 504, 513, 522, 531, 553, 554, 562, 596–599. She reported that her anxiety was high and was increased with situational stressors. R. 515.

### C. Opinion Evidence

On April 6, 2019, LMHC Amodio completed an assessment regarding Plaintiff's mental health impairments. R. 493–94. LMHC Amodio opined that the Plaintiff was severely limited in the following areas: 1) understand, follow, and remember simple instructions; 2) perform low stress, simple, and complex tasks independently; 3) interact with others and maintain appropriate behavior without exhibiting behavioral extremes; 4) maintain attention and concentration for rote tasks; and 5) function in a work setting. R. 493. LMHC Amodio opined that Plaintiff was moderately limited in her ability to maintain a schedule and attend to a daily routine, as well as to maintain basic standards of personal hygiene and grooming. R. 493.

On March 12, 2020, LMHC Amodio completed a medical source statement for Plaintiff. R. 587. LMHC Amodio opined that Plaintiff had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. R. 589. LMHC Amodio further opined that Plaintiff's impairments were likely to produce "good" and "bad" days. R. 589.

Because Plaintiff had no employment history, LMHC Amodio declined to render an opinion as to how often she would be off-task or absent from work due to her impairments. R. 589.

On July 22, 2020, Ruby Phillips, Ph.D. completed a psychiatric consultative evaluation for Plaintiff. R. 404–07. Dr. Phillips opined that there was no evidence of limitation in Plaintiff's abilities in the following areas: 1) understand, remember, or apply simple directions and instructions; 2) use reason and judgment to make work-related decisions; 3) sustain concentration and perform a task at a consistent pace; 4) sustain an ordinary routine and regular attendance at work; 5) maintain personal hygiene and appropriate attire; and 6) show awareness of normal hazards and take appropriate precautions. R. 406–07. Dr. Phillips opined that Plaintiff was mildly limited in her ability to understand, remember, or complex directions and instructions. R. 406. Dr. Phillips opined that Plaintiff was moderately limited in the following areas: interact adequately with supervisors, co-workers, and the public; and regulate emotions, control behavior, and maintain well-being. R. 406.

On July 29, 2020, state agency medical consultant M. Marks, Ph.D., reviewed Plaintiff's medical records and opined that she had no limitations in understanding, remembering, or applying information; she had mild limitations in interacting with others; she had moderate limitations in concentrating, persisting, and maintaining pace; and she had moderate limitation in adapting or managing herself. R. 73. Dr. Marks opined that Plaintiff was able to do the following without limitation: 1) understand and remember detailed instructions and work procedures; 2) maintain adequate attention and concentration to complete work-like procedures and sustain a routine; 3) appropriately engage in basic interactions to meet work-related needs; and 4) cope with changes and make routine decisions. R. 76.

**D.     Hearing Testimony**

Plaintiff testified that she completed eleventh grade, but she did not pass any tests or obtain any credits to graduate high school. R. 28. Plaintiff said that she cannot read or write very well. R. 28. She does write down notes for her therapist. R. 38. She spends most of her time sitting in her room. R. 29. She does not cook, but microwaves food or eats snacks. R. 30. She took a month-long bus trip two years before "to see if [she] was able to get any help somewheres [sic] else." R. 30–31. She takes a Medicaid bus to attend her therapy appointments. R. 31. Plaintiff said that she has not worked because of anxiety due to her childhood trauma. R. 31. She feels in danger when she is around people because of her childhood, resulting in flashbacks. R. 31. She finds it hard to take care of herself. R. 32.

Due to anxiety, Plaintiff said she feels her stomach locking up, tightening, the inside of her body starts shaking badly, and that it is hard for her to calm down. R. 33. Due to PTSD, Plaintiff said she gets "nightmares and back flashes." R. 39. She stays in her room for approximately four hours at a time, and she normally lies in her bed and "think[s] about everything." R. 36. Plaintiff said that she does not watch television, read, or listen to music because it is hard for her to concentrate. R. 36. She feels that because of her childhood trauma, everyone "is the same" and that they would try to hit her. R. 38. She feels "stuck" and does not know what to do with her time and feels like she wants to "give up my life." R. 38–39.

Plaintiff said that she finds it hard to follow instructions and remember how to do things; she gets frustrated easily. R. 40–41. Plaintiff said during the hearing that she had trouble comprehending what was being asked of her and that she was going to cry. R. 43. Plaintiff said that she hits herself a lot when she is frustrated. R. 43. She said that she needed reminders to do things and she might go three or four days without brushing her hair. R. 44.

## IV. THE ALJ's DECISION

The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether Plaintiff qualified for disability benefits. The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 28, 2020, the application date. R. 12. The ALJ found Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, PTSD, and ADHD. R. 12. The ALJ found that no combination of impairments met or equaled a regulatory listing. R. 13–14. Next, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She should work in a low-stress job, defined as one requiring occasional decision making and judgment with occasional changes in the work setting. She should work at goal-oriented work rather than production pace rate work. She should have occasional contact with coworkers and supervisors and no public contact. She should work at a job with a math and language GED of 1.

R. 15. The ALJ determined that Plaintiff had no past relevant work, but considering her age, education, work experience, and RFC, she was capable of performing other available jobs identified by a vocational expert: hand packager, silver wrapper, and sorter. R. 18–19. Accordingly, the ALJ concluded that Plaintiff was not under a disability since April 28, 2020. R. 19.

## V. DISCUSSION

### A. The Parties' Arguments

On appeal, Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence and is the product of legal error because she failed to properly evaluate the opinion of LMHC Amodio. (Dkt. No. 9). First, Plaintiff contends that "the ALJ's treatment of LMHC Amodio's opinion is not supported by substantial evidence where the ALJ does not clearly indicate how persuasive the ALJ found the opinion." (*Id.*, at 12). According to Plaintiff, the ALJ found

LMHC Amodio's opinion to be persuasive but did not incorporate his "severe opinions in almost all areas of mental functioning into her RFC." (*Id.*). Plaintiff also argues that the ALJ failed to properly address the supportability and consistency of LMHC Amodio's opinion. (*Id.*, at 13–20). Plaintiff asserts that "[t]he ALJ's failure to properly evaluate L.M.H.C. Amodio's opinion was harmful as Plaintiff would have been found disabled but for the ALJ's errors." (*Id.*, at 20).

The Commissioner asserts that the ALJ properly evaluated the opinions from LMHC Amodio, which were inconsistent with and unsupported by the record as a whole. (Dkt. No. 11). In reply, Plaintiff contends that the Commissioner's arguments lack merit. (Dkt. No. 12).

B.      **Assessing Medical Opinions**

Under the new regulations applicable to Plaintiff's claim, the Commissioner will no longer give specific evidentiary weight to medical opinions. *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891, 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022); *see Wanda N. v. Comm'r of Soc. Sec.*, No. 6:21-CV-00358, 2022 WL 4376484, at *6 (N.D.N.Y. Sept. 22, 2022). "Rather, the Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on: supportability; consistency; relationship with the claimant (which includes the length of treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and examining relationship); specialization; and 'other factors.'" *Elizabeth P.*, 2022 WL 507367, at *4 (quoting 20 C.F.R. § 404.1520c(a)-(c)).

"The regulations explain that when 'evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings,' the 'most important factors ... are supportability ... and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. 2022) (summary order) (footnote omitted) (quoting 20 C.F.R. § 404.1520c(a)); *see also Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) ("At

their most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (citing *Jacqueline L. v. Commissioner*, No. 6:19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. January 26, 2021)).

"'Supportability' means '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Celia A. B. v. Commr. of Soc. Sec.*, 5:21-CV-112, 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see Andrea G. v. Commr. of Soc. Sec.*, 5:20-CV-01253, 2022 WL 204400, at *4 (N.D.N.Y. Jan. 24, 2022) ("Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by 'relevant ... objective medical evidence and supporting explanations,' the 'more persuasive' it will be.") (quoting 20 C.F.R. § 404.1520c(c)(1), and citing *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.")).

"'Consistency' means '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As Judge Hummel recently explained:

> "If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record,

11

> remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted). . . .
>
> "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she] [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted). Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question [ ]; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ." *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).
>
> "It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims." *Amber H. v. Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021). "[A]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision." *Renalda R. v. Comm'r of Soc. Sec.*, 20-CV-0915 (TWD), 2021 WL 4458821, at *5 (N.D.N.Y. Sept. 29, 2021) (citations and quotation marks omitted).

*Elizabeth P.*, 2022 WL 507367, at *4. If the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, at *7 (July 2, 1996). The failure to do so is grounds for remand. *See Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-6211, 2022 WL 4643044, at *7 (E.D.N.Y. Sept. 30, 2022).

12

### C. Analysis

#### 1. The ALJ Erred in Analyzing LMHC Amodio's Opinion

As discussed above, LMHC Amodio treated Plaintiff's mental health conditions and gave two opinions as to her related impairments. The ALJ summarized these opinions, noting that LMHC Amodio assessed that Plaintiff had various severe and moderate limitations. R. 18. The ALJ found that LMHC Amodio's opinion was "persuasive insofar as it is from a treating source familiar with the claimant's progress." R. 18. But the ALJ then found that LMHC Amodio's opinion was not "consistent with the record as a whole, including the claimant's high level of daily activity, which supports a finding that she has greater abilities than those opined." R. 18. And in formulating Plaintiff's RFC, the ALJ rejected all of the severe limitations found by LMHC Amodio. R. 15. Thus, the ALJ effectively disregarded LMHC Amodio's opinion, despite indicating that it was persuasive. The Commissioner argues that "[a] plain reading of the decision shows that the ALJ found Mr. Amodio's opinions only persuasive in part." (Dkt. No. 11, at 13). However, the Commissioner does not identify what part of the opinions were credited by the ALJ, and it is not clear to the Court what persuasive value, if any, the ALJ afforded to them. This sort of analysis does not comply with the new regulations, which require an ALJ to *articulate* the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b) and 416.920c(b). In sum, the ALJ's failure to clearly articulate how persuasive she found LMHC Amodio's opinion was error.

Next, the Court finds that the ALJ failed to discuss the supportability of LMHC Amodio's opinion. Supportability and consistency are the most important factors in evaluating a medical source's opinion, and the ALJ is required to *explicitly* address them. *See* 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2) ("[W]e will explain how we considered the supportability

13

and consistency factors for a medical source's medical opinions ... in your determination or decision."). Here, the ALJ's analysis does not mention supportability at all, much less address "the objective medical evidence and supporting explanations" presented by LMHC Amodio to support his opinion. 20 C.F.R. § 416.920c(c)(1). The ALJ's failure to explain how she considered the supportability of LMHC Amodio's opinion was error. *See Robert T.S. v. Comm'r of Soc. Sec.*, No. 21-CV-38, 2022 WL 1746968, at *6 (N.D.N.Y. May 31, 2022) (observing that the ALJ "is required to discuss the supportability of every medical opinion in the record," and [t]he failure to do so amounts to legal error"); *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (finding that the ALJ erred by failing to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions").

**2. Remand is Required**

In general, remand for Social Security claims is appropriate when the ALJ failed to apply the correct legal standards, including adequately considering and applying the regulatory factors, unless the failure to do was harmless. *See Jackson v. Kijakazi*, No. 20-CV-7476, 2022 WL 620046, at *20 (S.D.N.Y. Mar. 3, 2022). As discussed above, the ALJ erred in analyzing the opinions of LMHC Amodio. The Commissioner appears to argue that any such errors were harmless because the ALJ's appropriate analysis can be gleaned from the decision as a whole. (Dkt. No. 11, at 13–18). Even conducting a "searching review of the record," however, the Court is not assured that "the substance of the [regulations] was not traversed." *See Loucks*, 2022 WL 2189293, at *2 (citations omitted). Consequently, remand is necessary for the ALJ to re-evaluate LMHC Amodio's opinion based on the required regulatory framework and assess any resulting impact on Plaintiff's RFC. *See Wanda N. v. Commr. of Soc. Sec.*, 6:21-CV-00358,

...
...
...

2022 WL 4376484, at *11 (N.D.N.Y. Sept. 22, 2022) (remanding "to allow the ALJ to more fully explain the supportability and consistency factors" in medical source opinion); *Darla W. v. Comm'r of Soc. Sec.*, No. 20-CV-1085, 2021 WL 5903286, at *10 (N.D.N.Y. Dec. 14, 2021) (remanding due to the ALJ's failure to adequately explain the supportability and consistency factors).

## VI. CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, (Dkt. No. 11), is **DENIED**, and Plaintiff's motion for judgment on the pleadings, (Dkt. No. 9), is **GRANTED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

Dated: April 19, 2023

Thomas J. McAvoy
Senior, U.S. District Judge